May I please the court? I'm very interested in answering your questions today because I believe that will be the most helpful, but there are three main reasons why the district court abused its discretion in compelling arbitration. First, the Texas Supreme Court in Merrill Lynch made it very clear, and I quote, ìIf the parties have not agreed to arbitration, no trial court has discretion to make them go.î Here, it is undisputed that Dr. Hays never agreed to arbitrate any claims against HCA. Second, in compelling arbitration, the district court relied on the intertwined claims theory, which has never been adopted by the Texas Supreme Court and has been rejected by both federal and state courts in Texas, including in the Southern District of Texas in an opinion that this court affirmed in full just recently. Third, even if the intertwined claims theory was valid, the district court did not make the requisite findings for that theory to apply. On the first point, it's undisputed that Dr. Hays never agreed to arbitrate any claims against HCA. The document that's claimed to require arbitration, the Physician Employment Agreement, specifically says it's entered into between Austin Hart and Dr. Hays. HCA is not mentioned anywhere in that agreement. But don't you raise the almost identical indistinguishable factual allegations against all three entities? I'm sorry, I'm not sure I understand, Your Honor. The allegations that you raise against all three entities factually identical. Your Honor, we disagree that it's factually identical, but that theory would be the concerted misconduct theory, which has been explicitly rejected by the Texas Supreme Court in Merrill Lynch and in other cases. And this court affirmed that Southern District of Texas decision in Rochade. And in Rochade, it had the exact same sort of situation where they just said defendants for all of them. In the Rochade court, Judge Ellison said, that's not enough in Texas. It doesn't matter. There's an artful pleading argument that Merrill Lynch did seem to recognize, that really, you're artfully trying to get around this by kind of grabbing in these other people, sort of like suing the employee instead of the employer to avoid the arbitration. What's your answer to that? Yes, Your Honor, I would say that if it was an employee-employer situation, that would be different, and the Texas Supreme Court has recognized that as an alter ego type thing and a direct benefit to Staple. But here, that's not the case. Here, all the parties were sued, HCA, Austin Heart, Capital Area Cardiology, and the conduct that's raised against HCA is individual to HCA itself. It is for negligence and discrimination and breach of a separate conduct, excuse me, contract against HCA. And that is different as a district. Dr. Hayes had several employers? Yes, Your Honor, he did. He worked in many hospitals throughout his career, many different healthcare facilities. Yes, Your Honor, at the same time. He was paid by two separate entities and so had multiple different employers, and that's what he is alleging in terms of against HCA is his separate relationship with HCA. Your Honor, in terms of the initial argument, in fact, Austin Heart, when it was compelling arbitration in the state court, HCA was represented by the same counsel, and they told the state court during that proceeding that the reason why they weren't moving to compel arbitration is because HCA was not a party to that agreement. And so it didn't feel like it had a proper basis to do so. It was only after it had removed it to federal court in which it sought to compel arbitration there. On the second point, in Rashid, this court recently affirmed that the Texas Supreme Court has never adopted the intertwined claims test, and it specifically said in relying on the Texas Court of Appeals in Glassell that the only form of equitable estoppel recognized in Texas is direct benefits estoppel. And so it only analyzed that sort of equitable estoppel theory. And Glassell specifically quoted the disputed language here in Merrill Lynch, in which it's talking about this intertwined claims test. And Glassell, after analyzing that, still came to the conclusion that the only form of equitable estoppel recognized in Texas is direct benefits estoppel. Rashid, in the Southern District of Texas, also looked at that and specifically said that other cases, including Cotton Commercial, which is the case relied on by the district court, that other courts might have misinterpreted Merrill Lynch said in describing the intertwined claims theory, was that it acknowledged that other federal circuits had applied this intertwined claims test in very specific circumstances. I'd like to talk a little bit about Cotton Commercial because that seems to be the case that's relied on most by the district court, and then appellees have cited that as well. But Cotton Commercial relied on two cases in particular that the Texas Supreme Court has rejected. The first was Grigson, which was this court's opinion, and it was citing to the 11th Circuit in adopting that test for intertwined claims. And Cotton Commercial relied on Grigson. But Merrill Lynch specifically rejected Grigson and said, although it might apply in the 5th Circuit, it does not apply in Texas, because that goes to the concerted misconduct question. It also limited its prior decision in Meyer, and Cotton Commercial relied on Meyer explicitly and in full to say that concerted misconduct and intertwined claims would be applicable. And in a footnote, the Merrill Lynch court said that Meyer was not applicable. What happened in Meyer was that there was both direct benefits estoppel and potentially concerted misconduct, and Merrill Lynch said that only the direct benefits of intertwined claims theory would apply. It's inapplicable here, because there are no findings by the district court that Dr. Hayes's claims are intimately founded in and intertwined with the underlying contract obligations, or that he sued in lieu of suing a contractual party, that he sued a party's non-signatory principal or agent for pulling the strings. And there's several flaws in that argument with the district court in terms of the lack of factual findings. First is, the intimately founded in and intertwined with the underlying contract obligations, that goes directly to direct benefits estoppel. It's basically saying the same thing. It's got to be founded in the contract itself. And appellees have tried to argue that, well, it just simply has to be somewhat related to it, but that's not the test. In talking, Judge Haynes, your question about whether or not there's the artful pleading, talking about the same sorts of claims, that's not what this intertwined claims test is saying. It's saying it's got to be related to or intertwined with the contract, not with other claims that you're making against other parties that might be compelled to arbitration. But what about their argument that this code of conduct that he signed doesn't give us any information about his salary and all that? You have to look at the physician's agreement or whatever the name of the contract of the arbitration clause is to get that, and therefore all of this employment stuff really is wrapped up together. Well, Your Honor, two problems with that. The first is the district court did not agree with them on that. The district court said that there's enough case law to suggest that this code of conduct might stand on its own, and so that goes forward. But then the district court also said it was not deciding it at that time. It was not deciding whether it was a contract. And so their argument, and they actually put in their brief that this has to find that this contract stands on its own in order for you to find direct benefits estoppel there. Well, the district court specifically said it wasn't going to find that because it wasn't proper, and appellees never appealed that decision. They're not asking for this court to, or they never appealed and said that the district court was wrong there, so they'd be going beyond what is actually here on appeal. The second issue, Your Honor, in terms of them having to find that is there's nothing in the record that shows that Dr. Hayes was not employed by HCA and was only employed by Austin Hart. That is simply not in the record. There's no factual findings that say that these documents, this code of conduct and this document that says physician employment agreement interrelate at all. Neither of them mention each other. Neither of them talk and say that they have to have one to have the other. There's nothing that suggests that this actually supplements any sort of relationship with Dr. Hayes, which is what they were asking, that this code of conduct has to be just a supplement to this physician employment agreement, but that's not present at all. Your Honor, the district court specifically determined that Dr. Hayes' negligence, his discrimination, his breach of contract claims were not founded in the physician employment agreement, but those stood independently to that, and that's why the district court found that there was no direct benefits estoppel. And again, because that's the only theory that's recognized in Texas, it also would mean that the intertwined claims theory would not apply. There also has not been any finding, any sort of evidence that shows that HCA is in some way the non-signatory principal or agent of Austin Hart. There's been a lot of things put in the brief that went beyond the record and without citation from appellees that suggest that they might be there, but they have never said and will not say that HCA is the principal or the agent of Austin Hart. That would get to the alter ego theory that is recognized in Texas, that if there is an alter ego, if the two entities are operating as one, in that case, arbitration may be appropriate. But here, there's been no claims that there are the alter ego of each other. The Texas Supreme Court in Merrill Lynch on that point specifically said that a corporate relationship is generally not enough to bind a non-signatory to an arbitration agreement. That's at page 191 of the Merrill Lynch decision. Here, appellees argument that any corporate relationship between HCA and Austin Hart to require arbitration has been explicitly rejected by the Texas Supreme Court. That decision in Merrill Lynch, along with the Glassell decision from the Court of Appeals in Texarkana, which this court relied on its decision in Reshade, saying that the only form of equitable estoppel recognized in Texas is direct benefits estoppel, applies here, which is why Dr. Hayes should not be compelled to arbitrate his claims against HCA, and this court should remand the case back to the district court for further proceedings. Unless there's any other questions, Your Honor, I'll reserve the rest of my time for rebuttal. All right. Thank you, sir. Ms. Alvarado. May it please the Court, good morning. My name is Lisa Alvarado, and I represent the appellees, HCA Holdings, Inc., and HCA Physician Services, Inc. HCA Holdings, Inc. is the ultimate parent company of Austin Hart, PLLC, which was Dr. Hayes' employer. I know there's been argument that Dr. Hayes had four employers or three employers, and that's not accurate. In the record, he's claiming four employers, and therefore all this employment stuff. If they weren't his employer, they're not subject to this employment stuff. They went on the merits. That's the end of it, but it doesn't seem to have much to do with the arbitration record. But Dr. Hayes is treating all four entities, HCA Holdings, Inc., HCA Physician Services, Inc., Austin Hart, PLLC, and its member, Capital Area Cardiology, which were all affiliates. He's treating them as a single unit. He's asserted identical claims against all four entities, and in fact, the arbitration is still proceeding against his employer, Austin Hart, PLLC, and Capital Cardiology as we speak. They've already conducted 11 depositions. There's going to be a final arbitration hearing in late January. To address counsel's argument that Dr. Hayes, and again, I know the issue is whether you can compel non-signatories to arbitration, and we have to focus on the arbitration clause, we have to look at the substance of Dr. Hayes' allegations, not his legal claims, but the actual substance, what he has alleged against these entities. And all four entities, he's alleged all allegations relating to his employment. In the record, there's a physician employment contract signed by Dr. Hayes and Austin Hart, PLLC, not HCA Holdings, Inc., or HCA Physician Services, Inc. In the record, there is a mutual agreement of termination, again, signed by in agreement by Dr. Hayes and Austin Hart, PLLC, not HCA Holdings, Inc., or HCA Physician Services, Inc. It goes beyond a legal stretch to argue, when the record is clear, there is one employer of Dr. Hayes. He's not asserted any Bill Piercing or Alter Ego claim. He's asserted identical claims against four entities. He's referenced the code of conduct that he's in breach of contract. If he's treating HCA Holdings, Inc. and HCA Physician Services, Inc. as his employer, then they have the right to rely on the arbitration clause found in his employment contract. We dispute that these two entities employ Dr. Hayes, but he is relying on the code of conduct. In his physician employment contract, it specifically states that Dr. Hayes must comply with all procedures, including those from HCA Holdings, Inc., or any affiliate, which would include the code of conduct. Austin Hart, PLLC, Dr. Hayes' employer, adopted the code of conduct, which, in essence, is you must conduct yourself ethically. It's a business ethics policy. And like all affiliates in all companies, such as HCA Holdings, Inc., the affiliates are required to adopt these policies and, of course, to conduct themselves ethically. When you look at Dr. Hayes' allegations, they all relate to his employment. He's claiming discrimination, that they discriminated against him in his employment while he was employed. He's claiming negligence, that there was antiprofessional behavior and they failed to accommodate. Dr. Hayes, again, relating to his employment. He's claiming a breach of contract of his employment contract, again, relating to his employment. He's a cardiologist. I want to make sure I'm accurate on this. Not a surgeon. He's a cardiologist. He's a cardiologist. Right. He did have certain interventional privileges early in his practice. But it's my understanding he was a practicing cardiologist with Austin Hart. Turning again to the code of conduct, the code of conduct requires that the employees of affiliates such as Austin Hart conduct themselves ethically. And we've asserted this, and it's in the record in the trial court, there is no private cause of action for a breach of a code of conduct. There hasn't been one. There isn't one today. And we did argue that he doesn't have a private cause of action. When you look at Dr. Hayes' employment contract, it specifically states in the arbitration clause that he has agreed to arbitrate any controversy or claim relating to his appointment. And again, when you look at the allegations that he's raised against the Applees, they're all employment claims. He's not asserted an independent cause of action. The claims he has against his true employer, Austin Hart, PLLC, he's not asserted anything different other than the same causes of actions relating to his employment. Counsel had argued that the Merrill Lynch case has not recognized the intertwined claims test. There is no Texas Supreme Court that has outright rejected the intertwined claims test. I do understand that the concerted misconduct estoppel argument has been rejected by the court. And it stands to reason, when you have a concerted misconduct estoppel argument, it's mainly a fairness issue. Of course, all of this is based in equity because it's equitable estoppel. But what the court is saying with concerted misconduct is it would be unfair to have outside third parties forced to arbitrate when there's no relationship between these entities. The record is clear in this case. All four entities, the two Applees and the two that are in arbitration, which includes Dr. Hayes's employer, are all related. They're all affiliates of HCA Holdings, Inc. And our argument has been and will be you cannot argue that direct benefits or intertwined claims test is not applicable when you have this doctor who's asserting the identical claims against all parties relating to his employment that are covered under his employment agreement, which is all in the record. And finally, I want to focus back on the argument that there's a separate cause of action for a code of conduct, which there is not. If you look at his physician employment agreement, you will see duties and obligations of Dr. Hayes outlined in that agreement. There is nothing in the code of conduct that references Dr. Hayes's duties and responsibilities as a cardiologist at Austin Heart. There's nothing relating to his work hours, how much he's paid, what are his benefits, staffing. There's nothing in the code of conduct that speaks to or obligates Dr. Hayes with respect to how he practices as a cardiologist. And finally, at a minimum, the case should be stayed so that the arbitration that's currently pending and that will be finally heard in January will be concluded so that if there are any issues that need to be resolved, it can be resolved at that point. But there shouldn't be dual proceedings at this point. There shouldn't be two avenues of recovery when Dr. Hayes has only one remedy. And that remedy is whether or not he can recover damages for being terminated as a physician at Austin Heart. Therefore, the appellee's request that this court affirm the district court's judgment. All right. Thank you, ma'am. Mr. Terraso, any rebuttal? Yes, Your Honor. Very briefly, just a few points. The first is that I believe counsel has stated that the physician employment agreement for some way relates to this code of conduct and other policies and procedures, but that agreement, that document specifically says that it is related to the policies and procedures of the employer. An employer is defined as Austin Heart. It never says that there's anything related to HCA of policies and procedures or anything like that that have to be abided by. And so it's not true that this physician employment agreement, and that's in the record, I believe it starts at 842, that there's nothing in that agreement at all that in any way references HCA. Instead, the only reference to any other entity is Capital Area Cardiology, because it says that Austin Heart is Capital Area Cardiology's wholly owned. So how do we know how much he's going to be paid by these other entities? By HCA? Yeah, by any entity that's not a signatory to the physician's agreement. He had an agreement. He was being paid on a lump sum for a five-year period. Where was this agreement? That was separate. Separate from... Where is it? On the record side? I don't believe it's in the record, Your Honor. It's not in the record at all. Your Honor, the second thing is that counsel is relying on heavily, she's saying that there's all these claims, this negligence claim, discrimination claim, they're all related to his employment, but the Texas Supreme Court has repeatedly affirmed that it does not matter whether or not a claim like negligence or discrimination, which is based on state law and not on an employment agreement, whether or not that relates to someone's employment is not enough. And the District Court relied on that as well. The District Court specifically said a mere relationship between the claims and Hayes' employment is not enough, and that's of the record 1036. In making that determination, it's citing specifically to the Texas Supreme Court in its 2015 decision in GT Leach Builders v. Sapphire. Sued four entities that are all related affiliates. Are there four separate pockets, or is HCA as the parent responsible for paying any arbitration award? Or how does that work? Do you have four pockets? Your Honor, and again, in terms of the arbitration, I believe this is outside the record, but I'll say that they have kept them very separate. They are not in any way claiming that HCA is in any way involved in this arbitration itself. It's separate pockets from what we understand. So the award would be against the separate other entities? Yes, Your Honor. Not payable by HCA as the parent? As far as we know, Your Honor, they have separated them completely throughout. Your Honor, in terms of the stay itself, because no claims are arbitrable, then there is no need and it wouldn't be just for a stay. One thing that counsel has never raised, and they only briefly mention it in their response brief, is the Rochade case. And in that case, in this Court's decision just recently, I believe it was in February, specifically said that there's going to be two different arbitration proceedings, there's going to be a separate state court action, and it didn't stay any, any proceeding at all. And that wouldn't be just here because counsel also hasn't raised, either in their brief or in the argument, any issues that would be precluded, which is the one reason why the Merrill Lynch case looked at potentially doing a stay, was that are there going to be issues that are precluded such that the arbitration couldn't go forward as the district court, the federal court would decide it before the arbitration would? And that wouldn't happen here. As a practical matter, Judge Sparks' docket down the district court is usually an 18-month or longer docket. If this case came back, it would be another year and a half before any trial would occur. And any stay would just delay that even further, which would be unjust to Dr. Hayes. And, Your Honor, the damages that are being sought, again, don't overlap. They're being sought against HCA, and as Judge Haynes pointed out, if they're, it's true that they're not employers, that they're not responsible for all this, there's not going to be any damages. And if Pelley is right, which we believe they're wrong, but if HCA has no liability on this, then it's not going to matter at all. So, Your Honor, unless there's any further questions, thank you very much for your time. All right. Thank you, counsel. Thank you to both sides. This completes the arguments for this panel for this week. The argued cases, along with the NOAs, will be submitted, and we stand adjourned.